AMERICAN EXPRESS COMPANY, *Appellant,* vs. J. P. COCHRANE, as Liquidator of Palm Beach Bank & Trust Company, *Appellee.*

137 So. 696.

Division A.

Opinion filed November 7 1931.

*M. D. Carmichael, R. K. Lewis* and *L. A. Mooney,* for Appellant;

*Blackwell, Donnell & Moore,* for Appellee.

BUFORD, C.J.—American Express Company, being engaged in what is termed financial and travel business, a part of which was the negotiation and sale of what is known as ''American Express Company Travelers Cheques'', which cheques are purchased by the traveling

public for their convenience in securing cash at any place to which they may go, place such cheques with banks throughout the country for sale. The bank holds the cheques in trust for the American Express Company. The cheques are issued in denominations of ten, twenty, fifty and one hundred dollars and are payable in the United States and Canada in U. S. dollars or Canadian dollars and in all foreign countries at the current rate of exchange of the date of the currency of the particular country wherein a person may desire to cash such cheques. The cheques when issued are redeemable at the head office of the petitioner in New York City.

Prior to June 28, 1926, Palm Beach Bank & Trust Company acted as agent for the petitioner in selling these cheques. On that date the bank suspended business and was taken over by the State Banking Department. J. P. Cochrane became the duly appointed and qualified liquidator of that institution. American Express Company supplied to Palm Beach Bank & Trust Company $118,000.00 in these cheques. Palm Beach Bank & Trust Company issued its receipt for the cheques in the following form, to-wit:

AMERICAN EXPRESS COMPANY

603-608 McGlawn-Bowen Bldg.,
Atlanta, Ga.

Received in trust from 'the American Express Company Travelers Cheques of the American Express Company as follows:

| TRAVELERS CHEQUES | | CHEQUES NUMBERED | |
| --- | --- | --- | --- |
| Quantity | Denomination | From | To — Inclusive |
| 500 | $10. | A 3490740 | 3491239 |
| 300 | $20. | B 508410 | 508709 |
| 200 | $50. | C 4002980 | 4003179 |
| 100 | $100. | D 1464630 | 1464729 |

```
L. 10
200 F. Fcs.
400 F. Fcs.          T. R.
$ 250 T. C.
   Ex Order          Z.
$ 500 T. C.
   Ex Order          X
```

The undersigned hereby accepts responsibility for safe-keeping of said cheques and the due issue thereof, and agrees to account to the American Express Company therefor and for the proceeds received from the sale thereof. The said cheques until sold and the proceeds thereof when sold shall at all times remain the property of the American Express Company.

PALM BEACH BANK & TRUST CO., Bank

West Palm Beach, Fla.

M. A. Hunt,

Asst. Trust Officer.''

Date May 27 1926

Exhibit ''A''

From June 23rd to June 28th, 1926, inclusive, the bank sold cheques and collected charges thereon as agent for the American Express Company in the aggregate of $7,999.96 and attempted to remit the same by drafts, as follows: draft No. 10771, $551.38 dated June 23, 1926; draft No. 1877 for $3,137.83 dated June 28, 1926; draft No. 10781 for $1503.75 dated June 24, 1926; draft No. 10796 for $1,102.75 dated June 25, 1926; and draft No. 10810 for $1,704.25 dated June 26, 1926, all of which drafts were dishonored and not paid on account of the bank closing before drafts were presented for payment at the respective banks on which they were drawn.

Draft No. 1877 was drawn on the Atlantic National Bank, Jacksonville, Florida. The other four drafts were drawn on Hanover National Bank, New York.

Aside from this, the bank sold cheques for the American Express Company which with charges aggregated $120.30, which sum the bank did not attempt to remit prior to

its closing. After the bank was in the hands of the liquidator the American Express Company made demand for the payment of the sum of $7999.96 represented by the drafts and of the $120.30 which no effort had been made to remit as a preferred claim, contending that the same was a trust fund coming into the hands of the liquidator and to which fund the bank had never acquired any title whatsoever. The liquidator refused to allow the claim and to pay the same as a preferred claim.

American Express Company brought suit to impress the trust upon the assets of the bank in the hands of the liquidator and to require the payment thereof in the sum of $8120.26 in full. The result of the suit was a final decree, in the following language:

"This cause coming on this day to be heard on the petition of the American Express Company, a Corporation, the answer of J. P. Cochrane, as liquidator of Palm Beach Bank & Trust Company, and the report of the testimony taken in said cause before J. S. White, heretofore appointed Special Master herein, and it appearing to the Court that the testimony substantially sustains the allegations contained in the Petition and the equities are with the said American Express Company, and the Court being otherwise fully advised in the premises, it is, thereupon,

CONSIDERED, ORDERED, ADJUDGED AND DE-CREED that the American Express Company be and it is hereby declared to be a preferred creditor and its claim against J. P. Cochrane, as Liquidator of the Palm Beach Bank & Trust Company be, and it is hereby allowed as a preferred claim in the amount of Eight Thousand One Hundred Twenty and 26/100 ($8120.26) Dollars, to be paid only though out of a cash fund in the sum of Twenty-nine Thousand Six Hundred Ninety and 11/100 ($29,690.11) Dollars, shown by the records of this cause to have come into the hands of Orel J. Myers, as Receiver of the Palm Beach Bank & Trust Company, and the said claim of the American Express Company is to participate pro rata in said cash fund with all other preferred creditors whose claims have

been allowed to be paid out of said cash fund, the said American Express Company to have no preference out of the general assets of said Bank in the hands of said Liquidator. However, the balance of said claim shall participate and share as a common claim in the general assets of the Palm Beach Bank & Trust Company which may now be, or hereafter come, into the hands of said J. P. Cochrane, as Liquidator of the Palm Beach Bank & Trust Company.''

There is but one question presented for the consideration of this Court. That question appears to us to be properly stated in appellants brief as follows:

''Where on petition of a claimant against the liquidator of an insolvent bank for the allowance of a preferred claim, it is found by the court that the relationship between the claimant and the bank and the circumstances of the transactions justified the allowance of the claim as preferred, there having been no relation of debtor and creditor between the parties, no commingling of funds by consent and all transactions having been on a cash basis, is it not proper when ordering such claim paid as preferred that the cash of the bank on deposit with correspondent banks, which funds come into the hands of the Liquidator for administration, as well as cash from the vaults of the defunct bank, should be impressed with the trust, where the bank has done all in its power essential to constitute a separation of funds of the claimant from the cash in vault and its credit balance with other banks, by drawing drafts on its correspondent banks for the amount of claimant's funds, which drafts, when presented, were not paid on account of the insolvency and suspension of the drawer bank.''

There were five assignments of error. The first was:

''The Court erred in the entry of its Final Decree which said Final Decree is recorded with the Clerk's Office in Chancery Order Book 77 at page 307.''

The other four assignments of error were addressed to several different provisions of the final decree and, therefore, may be treated as surplusage. The only assignment

of error necessary to review every error that may be contended for appearing in the final decree is: "The Court erred in the entry of its final decree", identifying the decree by citation of its record and otherwise if deemed necessary. We mention this because the appellee contends that because none of the assignments of error make a distinction between that part of the fund which the bank attempted to remit, namely the sum of $7999.96, and the other part, namely $120.30, which was kept in the vault and for which no remittance was made, and because the decree was correct as to the $120.30 the assignment of error will not reach the error in regard to the $7999.96 if the decree as to this sum was erroneous. There is no merit in the contention.

The record shows that the cash assets of the Bank passing to the liquidator are larger by the aggregate amount of the trust fund here involved than they would have been but for the inclusion of these items in such cash assets to which the insolvent bank had no title when it closed. Therefore, the total cash reserve fund of the bank may be impressed with this trust under the enunciation of the law as stated in Myers vs. Federal Reserve Bank of Atlanta, opinion filed April 29, 1931, reported 134 Sou. 600, wherein it was held:

"Where the cash assets of an insolvent bank passing to a receiver or liquidator are just that much larger than they would have been, but for the inclusion of items in such cash assets to which the insolvent bank had no title when it closed, such cash assets, whether consisting of cash in the vault, or of accounts with corresponding banks, or a combination of both, may be impressed with a trust to the extent of the amounts included therein to which the insolvent bank had no right."

"There is a difference between a trust fund which merely comes into the hands of a bank for some purpose or another before it is closed by reason of insolvency, and is found in the closed bank when it

closes, and a trust fund which consists of money which has been separated from the bank's cash assets before the bank closed, but by reason of circumstances passed to the receiver as included in the cash assets, although not rightfully so.''

''Where a remittance made by an insolvent bank before it closed is regarded in law as having been made out of the total cash reserve fund of the bank, even though a check representing such remittance is drawn only upon a constituent part of such cash reserve fund in a correspondent bank, the whole cash reserve fund is regarded as increased when the remittance check representing the separation and withdrawal from the cash reserve fund is not paid because of the closing of the bank, thereby allowing the cash reserve fund of the bank to pass to a receiver or liquidator with the amount of the attempted remittance still included therein.''

Therefore, the decree should be reversed with directions that a decree be entered not inconsistent with this opinion. It is so ordered.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.